DRUMMOND, District Judge. This mode of return is objectionable. I think that the officer ought to serve the writ on the parties themselves and return the fact that he has done so. This might give rise to controversy; still, under the special circumstances, I will give you the peremptory writ, but I think that ought to be served on the individual members of the board.

## Case No. 4,047a.

### DOWNTON v. YAEGER MILLING CO.

Circuit Court, E. D. Missouri. March 28, 1879.

[See 9 Fed. 402.]

DOWS (BLAISDELL v.). See Case No. 1,489.

DOWS (BOWKER v.). See Case No. 1,734.

DOWS (CASSEL v.). See Case No. 2,502.

## Case No. 4,048.

### DOWS et al. v. CHICAGO & S. W. RY. CO. et al.

[Trans. Rec. U. S. Sup. Ct. Oct. Term, 1876, p. 10,334.]

Circuit Court, D. Iowa. Aug. 3, 1875.[1]

RAILROAD FORECLOSURES — MISCONDUCT OF TRUSTEES—PARTIES TO CROSS BILLS — GUARANTEE—SUBROGATION — INTERPRETATION AND VALIDITY OF CONTRACTS—ULTRA VIRES.

[1. Mortgage bonds on the main line of a railroad were guaranteed by another company, with a full right of subrogation for any payments made by it. Afterwards a branch line mortgage was given to the same trustees, but the bonds were not guaranteed. The guarantor, having made payments of interest on the main line bonds, caused the trustees to institute a foreclosure suit. Certain branch line bondholders were made parties on their own petition, claiming that their interests were affected, and that their trustees were guilty of bad faith and collusion in bringing the suit. Held, that as these bondholders were thus brought within the protection of the court, which would see that their rights were properly guarded, they could not insist on the alleged misconduct of the trustees as a ground for denying the relief sought.]

[2. At the time the intervening bondholders were made parties to the original bill, cross bills by both the mortgagor and guarantor companies were on file, but the intervenors were not made parties thereto, nor did they ask it. Held, that the proceedings under the cross bills were not invalid on that account, for the intervenors could not be considered as necessary parties thereto, as their trustees, who were parties, represented them.]

[3. Where a guarantor of railroad mortgage bonds is by express stipulation to be subrogated to all the rights of the mortgagees in respect to any payments made by it, its right to foreclose for interest payments which it has accordingly made cannot be denied on the ground that, as it would still remain bound on its guarantee, it would have the right to further foreclosures for future payments. Any purchaser at the fore-

closure sale would be presumed to take this into account, and make provision accordingly.]

[4. A railroad company which guaranteed the bonds of another company, with a right of subrogation to the mortgage lien, further agreed "either to furnish equipment for the operation of said road, or to lease and operate the same on terms to be agreed upon between them." Held, that this stipulation could not be construed as a contract to lease for a rental sufficient to pay the interest on the guaranteed bonds.]

[5. The mortgagor company, having afterwards commenced a branch line and issued bonds upon it, made an additional contract with the guarantor company, containing the provision that, "with regard to the lease of said branch, it shall be used and operated * * * in the same manner and on the same terms as the main line." Held, that this referred merely to leasing and operation, and did not include an agreement to guarantee the branch line bonds.]

[6. The executive committee of a railroad company appointed a subcommittee of two to "agree upon the basis of a contract" for a running arrangement with another road, and report the same. Acting with a similar committee of the other road, the subcommittee accordingly agreed upon the terms of a perpetual lease. When this agreement was made, a third member of the executive committee was present and assented to it. He, with the two members of the subcommittee, constituted a majority of the executive. The contract, however, was subsequently rejected by a majority of the executive committee. Held, that such mere presence and assent did not make the agreement binding, and it never became a valid contract.]

[7. The R. Railroad Company, which had made an agreement to lease and operate a new road to be built by another company, was made the custodian of the latter's bonds and funds, which were to be paid out on the certificates of its chief engineer. Subsequently certain bondholders of the latter company sought to hold the R. Company liable on the ground that it was bound to see that the funds were properly applied, and that it had permitted them to be wasted and dissipated by extravagant construction contracts. It appeared, however, that the R. Company, after taking possession of the road, had, out of its own means, placed it in first-class condition. Held that, as the mortgage lien covered the road as thus improved, the bondholders were not injured, and their claim must fail.]

[8. Neither the officers nor directors of a railroad company have any authority to bind the company to supervise the construction of a railroad for another company, or to make it responsible for wasteful and extravagant expenditures in connection therewith.]

[9. The officers and directors of a railroad company cannot bind the company, by mere parol declarations and promises, to guarantee the bonds of another company; nor will the company be liable for any false representations or declarations of its individual officers or employees, in connection with sale of such bonds.]

[This was a foreclosure suit, brought by David Dows, Frederick S. Winston, and Calvin F. Burnes, trustees, against the Chicago & Southwestern Railway Company and the Chicago, Rock Island & Pacific Railroad Company. To this bill, Franz A. Muller, George Van der Kors, and Edward C. Boissevain Danielzoon were, on their own intervening petition, made parties defendant. The Chicago & Southwestern Railway Company filed a cross bill against all other original parties, and the Chicago, Rock Island & Pacific Company did the same. The inter-

[1] [Affirmed in 94 U. S. 444.]